IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SALEM PREFERRED PARTNERS, LLC., | : : | Civil No. 1:12-CV-1202 |
| Plaintiff | : : : | (Judge Mariani) |
| v. | : : | (Magistrate Judge Carlson) |
| DIAMOND HEAVY VEHICLE SOLUTIONS, LLC, et al., | : : : | |
| Defendants | : | |

**REPORT AND RECOMMENDATION**

I. <u>Statement of Facts and of the Case</u>

This case, which comes before the Court on a motion to dismiss, involves a commercial dispute brought by Salem Preferred Partners, LLC, a Virginia corporation, against Diamond Heavy Vehicle Solutions, LLC, a Pennsylvania company. At issue in the instant motion to dismiss is Count III of the Plaintiff's complaint. This count alleges that Salem entered into a written assembly services agreement with Diamond in February 1, 2011. (Doc. 1, ¶27.) Under the terms of this written agreement, Salem agreed to provide assembly services to Diamond, in return for payments from Diamond. (<u>Id</u>.) The complaint alleges that Salem "faithfully

1

performed" these services, but despite demands, Diamond has refused to pay Salem for services rendered. As of March 14, 2012, it is alleged that the amount due and owing for these services totals $354,989.42. (Id., ¶¶29-33.)

Diamond has moved to dismiss this count of Salem's complaint, citing to a provision of this written agreement between the parties, paragraph 6, which provides as follows:

> **COOPERATION AND DISPUTE RESOLUTION**
>
> DRVS and SPP agree to cooperate fully with one another in with all matter related to their performance under this Agreement. The full cooperation of the parties will also extend to the resolution of any dispute or controversy that may arise in connection with this Agreement. If the representatives of DRVS and SPP primarily responsible for the negotiation and performance of this Agreement are unable, after reasonable diligent effort, to resolve any dispute or controversy, then the matter will be referred to a Senior Executive Panel consisting of a Senior Executive of DRVS and a Senior Executive of SPP. The Senior Executive panel will convene a meeting within thirty (30) days of any such referral notice and apply commercially reasonable efforts toward a mutually acceptable resolution. This Article is not intended the limit the rights of either party to seek other legal and equitable redress.

(Doc. 1, Ex. J, ¶6.)

Arguing that Salem has not fulfilled this contractual mediation requirement–an assertion which Salem disputes–Diamond seeks dismissal of this contract claim. (Docs. 9, 11.) Salem has now responded to this motion to dismiss, arguing that dismissal of this claim is not appropriate, and suggesting instead that the appropriate

2

remedy would be a stay of proceedings to allow the parties to complete any mediation efforts contemplated under the parties' agreement. (Doc. 13.)

For the reasons set forth below, it is recommended that the motion to dismiss be denied, but that the case be stayed pending completion of any contractually-required mediation efforts.

## II. Discussion

### A. The Defendant's Motion to Dismiss Should be Denied, But This Case Should Be Stayed Pending Mediation as Required By the Contract

The Defendant has moved to dismiss Count III of this complaint, alleging that the Plaintiff has failed to state a claim upon which relief may be granted. Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007) continuing with our opinion in <u>Phillips</u> [<u>v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008)] and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u> –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more

heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id. In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint

4

states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court

5

> must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In practice, conside7ration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

As a federal court exercising diversity jurisdiction in this case, we are obliged to apply the substantive law of Pennsylvania to this dispute. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d. Cir. 2000). The legal principles governing the interpretation of contracts under Pennsylvania law is familiar and well-settled. Initially, "[w]hen a written contract is clear and unequivocal, its meaning must be determined by its contents alone." Mellon Bank, N.A. v. Aetna Bus. Credit, Inc., 619 F.2d 1001, 1010 (3d Cir. 1980) (citation omitted); Mace v. Atl. Ref. & Mktg. Corp., 785 A.2d 491, 496 (Pa. 2001). A contract is ambiguous only if it is reasonably

6

susceptible to different constructions and capable of being understood in more than one sense. St. Paul Fire & Marine Ins. Co. v. Lewis, 935 F.2d 1428, 1431 (3d Cir. 1991). Under Pennsylvania law, ambiguous contracts are interpreted by the trier of fact, and unambiguous contracts are interpreted by the court as a matter of law. Mellon Bank, 619 F.2d at 1011 n.10.

The United States Court of Appeals for the Third Circuit has aptly summarized Pennsylvania law regarding the interpretation of contractual language and terms:

> The fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the contracting parties. The intent of the parties to a written agreement is to be regarded as being embodied in the writing itself. The whole instrument must be taken together in arriving at contractual intent. Courts do not assume that a contract's language was chosen carelessly, nor do they assume that the parties were ignorant of the meaning of the language they employed. When a writing is clear and unequivocal, its meaning must be determined by its contents alone. Only where a contract's language is ambiguous may extrinsic or parol evidence be considered to determine the intent of the parties. A contract contains an ambiguity if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. This question, however, is not resolved in a vacuum. Instead, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts. In the absence of an ambiguity, the plain meaning of the agreement will be enforced. The meaning of an unambiguous written instrument presents a question of law for resolution by the court.

Great Am. Ins. Co. v. Norwin Sch. Dist., 544 F.3d 229, 243 (3d Cir. 2008) (internal citation omitted) (citing Murphy v. Duquesne Univ., 777 A.2d 418, 429-30 (Pa. 2001)). Furthermore, courts must, whenever possible, read contract provisions so as

to avoid ambiguity. Id. at 247. Where a contract is not ambiguous, but is instead subject to only one reasonable interpretation, it is appropriate for a district court to resolve the issue of interpretation as a matter of law. See Norfolk S. Ry. v. Reading Blue Mountain & N. Ry., 346 F. Supp. 2d 720, 725 (M.D. Pa. 2004). Further, under Pennsylvania law, agreements must satisfy the following three requirements to be enforceable: (1) both parties must manifest an intent to be bound by the terms of the agreement; (2) the terms must be sufficiently definite to be enforceable; and (3) the agreement must be supported by consideration. ATACS Corp. v. Trans World Commc'ns., Inc., 155 F.3d 659, 666 (3d Cir. 1998) (internal citations omitted). Finally, to satisfy its burden of pleading a breach of contract claim, a plaintiff must plead facts which establish: (1) the existence of a contract; (2) a subsequent breach of that contract; and (3) damages resulting from the alleged breach. J.F. Walker Co., Inc., v. Excalibur Oil Grp., Inc., 792 A.2d 1269, 1272 (Pa. Super. 2002).

Judged against these standards, Salem's complaint sufficiently alleges a breach of contract claim. Fairly construed, Count III of the complaint states that Salem entered into a written assembly services agreement with Diamond in February 1, 2011. (Doc. 1, ¶27.) The complaint alleges that Salem "faithfully performed" these services, but despite demands, Diamond has refused to pay Salem for services rendered. As of March 14, 2012, it is alleged that the amount due and owing for these services totals $354,989.42. (Id., ¶¶29-33.) These averments plainly allege the

essential elements of a contract claim: (1) the existence of a contract; (2) a subsequent breach of that contract; and (3) damages resulting from the alleged breach. J.F. Walker Co., Inc., v. Excalibur Oil Grp., Inc., 792 A.2d 1269, 1272 (Pa. Super. 2002).

In our view, Diamond's reliance upon paragraph 6 of the parties' agreement as grounds for dismissal of this claim is misplaced. At the outset, we note that the parties' pleadings present contrasting factual views regarding whether the parties have attempted to mediate this commercial dispute, with Diamond claiming that no such mediation has occurred and Salem asserting that the parties engaged in extensive discussions prior to the filing of this lawsuit. These factual disputes plainly take this matter outside the proper realm of a motion to dismiss, where our consideration of the sufficiency of these pleadings is cabined by the well-pleaded facts set forth in the complaint.

In any event, paragraph 6 of the parties written agreement, by its terms states that: "This Article is not intended the limit the rights of either party to seek other legal and equitable redress." (Doc. 1, Ex. J, ¶6.) Given the parties' mutually expressed desire that this provision "is not intended the limit the rights of either party to seek other legal and equitable redress," it is difficult to understand how this provision may be relied upon as grounds for dismissal of this lawsuit. Indeed, Diamond's reliance on this provision of the parties' agreement is almost ironic since

Diamond asks us to conclude that a contract provision which expressly states that it "is not intended the limit the rights of either party to seek other legal and equitable redress," in fact achieves that very goal, a goal which the agreement eschews, and restricts Salem's ability to seek other legal relief..

Rather, the appropriate remedy under the arbitration and mediation provisions of this agreement would be a stay of proceedings while the parties complete the mediation process contemplated under this agreement. This procedure staying litigation pending mediation, is contemplated both by statute, see 9 U.S.C. § 3 ("If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement"), and by case law. See, e.g., Lloyd v. HOVENSA, LLC., 369 F.3d 263, 269 (3d Cir. 2004); Philadelphia Hous. Auth. v. Dore & Associates Contracting, Inc., 111 F. Supp. 2d 633, 638 (E.D. Pa. 2000).

Consistent with this settled legal authority, we therefore recommend that the Court deny the Defendant's motion to dismiss, and instead direct the parties to

mediate their dispute pursuant to paragraph 6 of the agreement between the parties, and stay proceedings pending completion of these mediation efforts.

### III. <u>Recommendation</u>

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the Court deny the Defendant's motion to dismiss, and instead direct the parties to mediate their dispute pursuant to paragraph 6 of the agreement between the parties, and stay proceedings pending completion of these mediation efforts.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 31st day of October 2012.

           ***S/Martin C. Carlson***
           Martin C. Carlson
           United States Magistrate Judge